AE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FOLLETT HIGHER EDUCATION GROUP, INC., an Illinois corporation,

Plaintiff,

v.

UGENIE, INC., a Delaware corporation,

Defendant.

07CV5943
JUDGE SHADUR
MAG.JUDGE ASHMAN

FILED
OCT 19 2007
OCT 1 9 2007 rq
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**COMPLAINT**

1. Follett Higher Education Group, Inc. ("Follett") brings this action to put a stop to defendant Ugenie, Inc.'s ("Ugenie") surreptitious, unauthorized, and illegal access to Follett's computer systems and misappropriation of Follett's proprietary data.

2. Follett owns and operates *e*Follett.com, an e-commerce Web site that supports more than 750 brick-and-mortar bookstores on college campuses ("*e*Follett"). *e*Follett allows college students and faculty to purchase an enormous selection of textbooks, computer products, and apparel and gifts.

3. Follett invests many millions of dollars and tens of thousands of person hours to manage and maintain *e*Follett, gathering data on textbook adoptions and course materials from faculty members and others on the 750 campuses where Follett has bookstores. It has developed an industry-leading course materials management system to assemble and organize this massive collection of data, all to ensure that it acquires and students can purchase the correct edition of the correct textbook for their courses.

4. Ugenie is a commercial Web site that offers a shopping and price comparison service to its customers. Within the past few weeks, Ugenie has begun offering a textbook search feature.

5. In deliberate disregard of Follett's proprietary rights, and in violation of the Computer Fraud and Abuse Act, the Digital Millennium Copyright Act, the Illinois Computer Crime Prevention Law, the terms of use of *e*Follett and Follett's proprietary interest in its computer systems, Ugenie has systematically and surreptitiously used a scraper or "bot" to misappropriate competitively sensitive and exceedingly valuable data from Follett's computer networks. Ugenie has used that data to divert sales from Follett and to generate profits for itself.

6. Follett now brings this action to restrain and enjoin Ugenie from its illegal conduct, and to recover monetary damages as compensation for the harm it has caused Follett.

**PARTIES, JURISDICTION, AND VENUE**

7. Plaintiff Follett Higher Education Group, Inc. is a corporation organized under the laws of Illinois with a principal place of business at 1818 Swift Drive, Oak Brook, IL 60523.

8. Upon information and belief, defendant Ugenie, Inc. is a corporation organized under the laws of Delaware with a principal place of business at 1200 Howard Avenue, Suite 201, Burlingame, California 94010.

9. This Court has subject matter jurisdiction over Follett's claims pursuant to 17 U.S.C. § 1203, 18 U.S.C. § 1030(g), and 28 U.S.C. §§ 1331 and 1338.

10. Further, this Court possesses subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 insofar as Follett and Ugenie are citizens of different states and the amount in controversy exceeds the sum or value of $75,000.

11. This Court has supplemental jurisdiction over Follett's state statutory and common law claims under 28 U.S. C. § 1367(a) insofar as these claims are so related to the federal claims that they form part of the same case or controversy.

12. Ugenie is subject to personal jurisdiction in this District because it has continuous and systematic contacts with this District, because it has illegally accessed Follett's computer networks located in this District, because a substantial part of its wrongful conduct has taken place in this District, and because Follett has sustained the harm from Ugenie's wrongful conduct here.

13. Venue is appropriate in this District pursuant to 28 U.S.C. §§ 1391(a) and (c).

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### Follett Pioneered The Online Sale of Textbooks

14. Follett Higher Education Group is a family-owned bookstore provider that has been in business for 134 years.

15. From its beginnings in 1873 as a small bookstore in Wheaton, Illinois, Follett has grown into the largest educational bookseller in America. In 2004, it sold more than 25 million textbooks. Stocking over 100,000 titles, it is the industry's largest wholesaler of used books to higher education. By stressing the family values of education, hard work, and achievement, Follett continues to expand, with annual sales exceeding $1 billion.

16. Follett operates and manages more than 750 bookstores on college and university campuses across the country, making it the largest operator of college bookstores in North America. Follett also provides management systems, support services, and used textbooks to over 1,800 independently managed bookstores.

17. Follett pioneered selling textbooks online in 1995. It introduced *e*Follett in 1999, which now serves more than 1,000 campuses nationwide. Through Follett's "click and mortar"

approach to products and services, more than four million students and 375,000 faculty members are annually served.

**Follett Has Made Tremendous Investments To Develop Its Database of Textbooks**

18. Operating college bookstores requires an enormous investment of resources. Follett employees work with faculty members on 750 campuses to gather textbook adoptions, that is, the selection of books and course materials that an instructor will use for a particular course during a particular semester.

19. After assembling this vast set of data, Follett organizes it into CourseTracks, Follett's industry-leading course materials system. Follett has invested more than $14 million and over 100,000 hours developing this data management system.

20. To ensure that students purchase the correct edition of the correct book, Follett gathers and organizes textbook data by school, division, department, course, and section.

21. All told, Follett employees spend tens of thousands of hours obtaining, verifying, and organizing course and book information, purchasing all the books for students, combing the used book market, and operating a textbook buyback program, all so that the correct books will be in stock for students at the start of the semester.

**Follett Prohibits The Automated Gathering and Commercial Use of Its Data.**

22. Follett uses this collection of data to offer books for sale online, at *e*Follett. A visitor to the site can search for and find the textbooks he or she needs for a particular course and purchase the books with a few clicks of a mouse.

23. Follett protects its enormous investment in its data by implementing terms, conditions, and restrictions on the use of its *e*Follet site (the "Terms of Use"). The Terms of Use establish a contractual relationship between Follett and visitors to *e*Follett, explicitly defining permitted uses of *e*Follett and explicitly prohibiting other uses.

24. For instance, Follett grants users only a limited right to access *e*Follett for noncommercial purposes, and it expressly prohibits automated data gathering:

> **License:** We grant you a limited license to access our site for your personal use only. Any commercial use, use in violation of the policy of any school represented on the site, or use for data collection and/or profit is not allowed.

See http://www.efollett.com/webapp/wcs/stores/servlet/FLHelpAboutView?langId=1&catalogId=10001&storeId=10051&demoKey=d

25. Follett also informs users that *e*Follett and the data that powers it are protected under copyright law:

> **Copyright**: All content on this site, including text, graphics, images, data compilations, lists and software, is the property of Follett Higher Education Group, Inc. or its licensors and is protected by U.S. and international copyright law. Downloading, printing, copying, distributing or using the contents of any pages in the site in any manner inconsistent with the license granted above and without prior written consent from Follett is prohibited.

See http://www.efollett.com/webapp/wcs/stores/servlet/FLHelpAboutView?langId=1&catalogId=10001&storeId=10051&demoKey=d

26. To enforce these restrictions, Follett employs technical means that automatically terminates a visitor's access to *e*Follett if the visitor makes more than a certain limited number of queries in a single session.

## Ugenie Has Used Automated Tools To Access *e*Follett Without Authorization And To Systematically Steal Follett's Proprietary Data

27. Ugenie is an online shopping service that purports to help users find the best prices for the items they want to purchase.

28. On August 16, 2007, Ugenie issued a press release announcing that it had created a "Course Textbook Finder:"

> **Ugenie Launches Course Textbook Finder, a New Tool to Help College Students Find Textbooks**
>
> SAN BRUNO, Calif.–(BUSINESS WIRE)–Ugenie today announced the launch of Course Textbook Finder, a new online tool for college students that enables them to learn which textbooks they need for their college courses. The tool has textbooks data for over 300,000 Fall 2007 courses at 1,130 U.S. and Canadian colleges and universities. With Course Textbook Finder, college students can find which books they need online, in addition to traditional information sources. This new online access adds to the variety of purchase options for college textbooks, making it even easier for students to shop around and save money on textbooks purchases.

See http://ugenie.com/blog/.

29. Ugenie created this new tool by using automated computer programs (known variously in the computer industry as "scrapers," "web crawlers," "spiders," "web robots," or "bots") to access *e*Follett without authorization and to steal Follett's valuable proprietary data.

30. Beginning in April 2007, bots began crawling and making automated queries of *e*Follett. An analysis of activity logs revealed that the bots originated from an Internet Protocol ("IP") address assigned to or associated with Ugenie. During April 2007, these bots downloaded nearly 26,000 pages from *e*Follett.

31. Bot activity increased steadily from May through August 2007. Ugenie's bots downloaded more than 30,000 pages from *e*Follett in May 2007 and more than 237,000 pages in June 2007. In July 2007 – just before Ugenie announced the launch of its new service – Ugenie's crawling activity skyrocketed: its bots downloaded nearly 1.5 million pages from *e*Follett. During August 2007, Ugenie's bots have downloaded more than 315,000 pages from *e*Follett.

32. All told, Ugenie's bots have downloaded more than 2 million pages and more than 21 gigbytes of data from *e*Follett.

33. Ugenie's bot crawling activity has imposed a substantial load on *e*Follett hardware and systems. On several days in July 2007, Ugenie's bots downloaded between 60,000 and 100,000 pages per day. The queries from those bots have consumed significant bandwidth from *e*Follett, accounting for as much as 7.5% of the daily traffic on the site and more than 5% of the daily bandwidth.

**Ugenie's Conduct Has Been Deliberate And Willful**

34. Ugenie's systematic activity leaves little doubt that its conduct was knowing and intentional. In addition, Follett notified Ugenie that its automated collection and use of data from *e*Follett was unauthorized and illegal, and it demanded that Ugenie cease and desist. Ugenie, however, has continued to use and profit from the data that it wrongfully took from Follett.

**COUNT I**
**VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT**
**(18 U.S.C. § 1030)**

35. Follett restates and re-alleges all of the allegations contained in Paragraphs 1 through 34 as if fully set forth herein.

36. Follett's computer systems, including *e*Follett, constitute a "protected computer" within the meaning of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030.

37. Beginning at least as early as April 2007, Ugenie has repeatedly and systematically accessed Follett's computer systems, including *e*Follett, without authorization or in excess of its authorized access.

38. Ugenie's access to Follett's computer systems and *e*Follett has been knowing and intentional, and done with intent to defraud.

39. By this conduct, Ugenie has furthered its intended fraud and obtained Follett's proprietary data, which has an enormous competitive value, well in excess of $5000.

40. Ugenie's conduct constitutes a violation of the CFAA, particularly, but without limitation, 18 U.S.C. § 1030(a)(4).

41. As a result of Ugenie's illegal conduct, Follett has suffered damage and loss within the meaning of 18 U.S.C. § 1030(g), as well as other irreparable harm to its business and goodwill.

42. Ugenie's illegal conduct is likely to continue unless restrained and enjoined.

43. Pursuant to 18 U.S.C. § 1030(g), Follett is entitled to preliminary and permanent injunctive relief and to compensatory damages.

**WHEREFORE**, Follett respectfully requests judgment as follows:

(1) That the Court enter a judgment in Follett's favor on Count I;

(2) That the Court issue preliminary and permanent injunctive relief that Ugenie, its officers, agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with them, be enjoined and restrained from:

(a) Using any software program or tool to access, gather, or obtain any textbook or course data from *e*Follett or Follett's computer systems; or

(b) Accessing in any way *e*Follett or Follett's computer systems for purposes of obtaining data for commercial purposes; or

(c) Circumventing or attempting to circumvent any technological measures that effectively control access to *e*Follett or Follett's database of textbook information; or

(d) Otherwise accessing *e*Follett or Follett's computer systems without express prior authorization, or

(e) Using any data that Ugenie has previously acquired from *e*Follett or Follett's computer systems;

(3) That the Court order Ugenie to pay Follett's general, special, actual, and statutory damages proximately caused by Ugenie's violations of the CFAA in an amount to be determined at trial;

(4) That the Court order Ugenie to pay to Follett the costs of this action and the reasonable attorneys' fees that it incurred in prosecuting this action; and

(5) That the Court grant Follett such other and additional relief as it deems just and proper.

**COUNT II**
**VIOLATIONS OF THE DIGITAL MILLENNIUM COPYRIGHT ACT**
**(17 U.S.C. § 1201 *et seq.* )**

44. Follett restates and re-alleges all of the allegations contained in Paragraphs 1 through 43 as if fully set forth herein.

45. *e*Follett and Follett's database of textbook and course information are works protected under Title 17 of the United States Code.

46. *e*Follett and Follett's database of textbook and course information are protected by technological measures that effectively control access to those works.

47. By the use of its automated bots, Ugenie has circumvented and attempted to circumvent the technological measures that control access to *e*Follett and Follett's database of textbook and course information.

48. Ugenie's circumvention and attempted circumvention of these technological measures is a violation of the Digital Millennium Copyright Act, particularly but without limitation 17 U.S.C. § 1201(a)(1).

49. As a result of Ugenie's circumvention and attempted circumvention of the technological measures that protect Follett's works, Follett has suffered irreparable harm to its business and monetary damages, and Ugenie has gained illicit profits.

50. Ugenie's illegal conduct is likely to continue unless restrained and enjoined.

51. Pursuant to 17 U.S.C. § 1203, Follett is entitled to preliminary and permanent injunctive relief and to compensatory damages.

52. Alternatively, pursuant to 17 U.S.C. § 1203, Follett is entitled to recover statutory damages for each act of circumvention by Ugenie.

**WHEREFORE**, Follett respectfully requests judgment as follows:

(1) That the Court enter a judgment in Follett's favor on Count II;

(2) That the Court issue preliminary and permanent injunctive relief that Ugenie, its officers, agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with them, be enjoined and restrained from:

(a) Circumventing or attempting to circumvent any technological measures that effectively control access to *e*Follett or Follett's database of textbook information; or

(b) Using any data that Ugenie has previously acquired from *e*Follett or Follett's computer systems;

(3) That the Court order Ugenie to pay Follett's general, special, and actual damages and all of Ugenie's profits pursuant to 17 U.S.C. § 1203 in an amount to be determined at trial, or, alternatively, statutory damages;

(4) That the Court order Ugenie to pay to Follett the costs of this action and the reasonable attorneys' fees that it incurred in prosecuting this action; and

(5) That the Court grant Follett such other and additional relief as it deems just and proper.

**COUNT III**
**UNJUST ENRICHMENT**

53. Follett restates and re-alleges all of the allegations contained in Paragraphs 1 through 52 as if fully set forth herein.

54. As a result of its systematic, unauthorized, and illegal access to Follett's computer systems, including *e*Follett, Ugenie has obtained significant and valuable benefits, including but not limited to massive amounts of textbook and course data. Without that stolen data, Ugenie could not have launched its Course Textbook Finder service.

55. Ugenie's wrongful acquisition of Follett's data has been to Follett's great harm and detriment.

56. Ugenie has been unjustly enriched by its acquisition, use, and retention of Follett's data.

57. It would be unjust to allow Ugenie to continue to enjoy these benefits.

58. Ugenie is liable to Follett for the enrichment that Ugenie has unjustly received.

**WHEREFORE**, Follett respectfully requests judgment as follows:

(1) That the Court enter a judgment in Follett's favor on Count III;

(2) That the Court issue preliminary and permanent injunctive relief that Ugenie, its officers, agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with them, be enjoined and restrained from:

(a) Using any software program or tool to access, gather, or obtain any textbook or course data from *e*Follett or Follett's computer systems; or

(b) Accessing in any way *e*Follett or Follett's computer systems for purposes of obtaining data for commercial purposes; or

(c) Circumventing or attempting to circumvent any technological measures that effectively control access to *e*Follett or Follett's database of textbook information; or

(d) Otherwise accessing *e*Follett or Follett's computer systems without express prior authorization, or

(e) Using any data that Ugenie has previously acquired from *e*Follett or Follett's computer systems;

(3) That the Court enter an order declaring that Ugenie holds in trust, as constructive trustee for the benefit of Follett, its illegal profits obtained from data obtained from Follett;

(4) That the Court enter an order requiring Ugenie to provide Follett a full and complete accounting of all profits that they obtained from data obtained from Follett;

(5) That the Court order Ugenie to pay to Follett the amount by which Ugenie has been unjustly enriched by the wrongful conduct described in this Complaint;

(6) That the Court order Ugenie to pay to Follett the costs of this action and the reasonable attorneys' fees that it incurred in prosecuting this action; and

(7) That the Court grant Follett such other and additional relief as it deems just and proper.

## COUNT IV
## ACCOUNTING

59. Follett restates and re-alleges all of the allegations contained in Paragraphs 1 through 58 as if fully set forth herein.

60. Follett is entitled, pursuant to 17 U.S.C. § 1203, to recover any and all profits that Ugenie realized as a result of its violations of the Digital Millennium Copyright Act.

61. Follett is entitled to recover the amounts by which Ugenie has been unjustly enriched by its illegal and otherwise wrongful conduct.

62. The amount of money due from Ugenie to Follett is unknown to Follett and cannot be fully ascertained without a detailed accounting by the Ugenie of the data that it wrongfully acquired and the sales and profits that it generated by the use of that data.

**WHEREFORE**, Follett respectfully requests judgment as follows:

(1) That the Court enter a judgment in Follett's favor on Count IV;

(2) That the Court enter an order declaring that Ugenie holds in trust, as constructive trustee for the benefit of Follett, its illegal profits obtained from data obtained from Follett;

(3) That the Court enter an order requiring Ugenie to provide Follett a full and complete accounting of all profits that Ugenie received from its use of data obtained from Follett;

(4) That the Court order Ugenie to pay to Follett the amount by which Ugenie has been unjustly enriched by the wrongful conduct described in this Complaint; and

(5) That the Court grant Follett such other and additional relief as it deems just and proper.

**COUNT V**
**BREACH OF CONTRACT**

63. Follett restates and re-alleges all of the allegations contained in Paragraphs 1 through 62 as if fully set forth herein.

64. The Terms of Use between Follett and Ugenie is a valid and enforceable contract that is supported by consideration and is clear and definite in all of its material terms.

65. Follett has performed its obligations under the Terms of Use.

66. By the conduct described in this Complaint, Ugenie has breached its contract with Follett.

67. Follett has been damaged as a result of Ugenie's breaches.

**WHEREFORE**, Follett respectfully requests judgment as follows:

(1) That the Court enter a judgment in Follett's favor on Count V;

(2) That the Court order Ugenie to pay Follett's general, special, actual, and statutory damages proximately caused by Ugenie's breach of the Terms of Use in an amount to be determined at trial; and

(3) That the Court grant Follett such other and additional relief as it deems just and proper.

**COUNT VI**
**TRESPASS TO CHATTELS**

68. Follett restates and re-alleges all of the allegations contained in Paragraphs 1 through 67 as if fully set forth herein.

69. The Terms of Use between Follett and Ugenie is a valid and enforceable contract that is supported by consideration and clear and definite in all of its material terms.

70. By the Terms of Use, Follett granted Ugenie a limited license to access *e*Follett and its computer systems.

71. By the conduct described in this Complaint, Ugenie knowingly and intentionally exceeded that license and accessed *e*Follett and Follett's computer systems without permission or authorization.

72. Follett's systems have a finite capacity, and Ugenie's unauthorized access consumed some of that capacity and otherwise interfered with Follett's possessory interest in its computer systems, including *e*Follett.

73. Follett has been damaged as a result of Ugenie's trespass to its computer systems, including *e*Follett.

**WHEREFORE**, Follett respectfully requests judgment as follows:

(1) That the Court enter a judgment in Follett's favor on Count VI;

(2) That the Court issue preliminary and permanent injunctive relief that Ugenie, its officers, agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with them, be enjoined and restrained from:

(a) Using any software program or tool to access, gather, or obtain any textbook or course data from *e*Follett or Follett's computer systems; or

(b) Accessing in any way *e*Follett or Follett's computer systems for purposes of obtaining data for commercial purposes; or

(c) Circumventing or attempting to circumvent any technological measures that effectively control access to *e*Follett or Follett's database of textbook information; or

(d) Otherwise accessing *e*Follett or Follett's computer systems without express prior authorization, or

(e) Using any data that Ugenie has previously acquired from *e*Follett or Follett's computer systems;

(3) That the Court order Ugenie to pay Follett's general, special, actual, and statutory damages proximately caused by Ugenie's trespass to *e*Follett and Follett's computer systems in an amount to be determined at trial; and

(4) That the Court grant Follett such other and additional relief as it deems just and proper.

**COUNT VII**
**FOR IMPOSITION OF A**
**CONSTRUCTIVE TRUST UPON ILLEGAL PROFITS**

74. Follett restates and re-alleges all of the allegations contained in Paragraphs 1 through 73 as if fully set forth herein.

75. By virtue of the wrongful conduct described in this Complaint, Ugenie has illegally received money and profits that rightfully belong to Follett.

76. Upon information and belief, Ugenie holds the illegally received money and profits in the form of bank accounts, real property, or personal property that can be located and traced.

77. Ugenie holds the money and profits that it illegally received as constructive trustee for the benefit of Follett.

**WHEREFORE,** Follett respectfully requests judgment as follows:

(1) That the Court enter a judgment in Follett's favor on Count VII;

(2) That the Court enter an order declaring that Ugenie holds in trust, as constructive trustee for the benefit of Follett, its illegal profits obtained from data obtained from Follett;

(3) That the Court enter an order requiring Ugenie to provide Follett a full and complete accounting of all profits that Ugenie received from its use of data obtained from Follett;

(4) That the Court order Ugenie to pay to Follett the amount by which Ugenie has been unjustly enriched by the wrongful conduct described in this Complaint; and

(5) That the Court grant Follett such other and additional relief as it deems just and proper.

**COUNT VIII**
**VIOLATIONS OF ILLINOIS COMPUTER CRIME PREVENTION LAW**
**(720 ILCS 5/16D)**

78. Follett restates and re-alleges all of the allegations contained in Paragraphs 1 through 77 as if fully set forth herein.

79. Follett's computer systems, including *e*Follett, constitute a "computer" within the meaning of the Illinois Computer Crime Prevention Law, 720 ILCS 5/16D-2(a).

80. Follett's database of schools, colleges, universities, courses, and textbook information are "data" within the meaning of the Illinois Computer Crime Prevention Law, 720 ILCS 5/16D-2(c)

81. Beginning at least as early as April 2007, Ugenie has repeatedly and systematically accessed Follett's computer systems, including *e*Follett, without authorization or in excess of its authorized access.

82. Ugenie's unauthorized access and/or access in excess of its authorization to Follett's computer systems and *e*Follett has been knowing and intentional.

83. Ugenie has inserted or attempted to insert into Follett's computer systems a "program" within the meaning of the Illinois Computer Crime Prevention Law, 720 ILCS 5/16D-2(b), including but not limited to bots, web crawlers, spiders, and scrapers, knowing that such program will remove data and that such program will or may cause loss to Follett and other users of *e*Follett and Follett's computer systems.

84. By its unauthorized access and/or access in excess of its authorization to Follet's computer systems and *e*Follett, Ugenie has obtained Follett's proprietary data.

85. Ugenie's conduct constitutes a computer tampering, in violation of the Illinois Computer Crime Prevention Law, 720 ILCS 5/16D-3, particularly, but without limitation, 720 ILCS 5/16D-3(a)(4).

86. As a result of Ugenie's illegal conduct, Follett has suffered damage and loss within the meaning of the Illinois Computer Crime Prevention Law, as well as other irreparable harm to its business and goodwill.

87. Ugenie's illegal conduct is likely to continue unless restrained and enjoined.

88. Pursuant to 720 ILCS 5/16D-3(c), Follett is entitled to preliminary and permanent injunctive relief and to compensatory damages.

**WHEREFORE**, Follett respectfully requests judgment as follows:

(1) That the Court enter a judgment in Follett's favor on Count VIII;

(2) That the Court issue preliminary and permanent injunctive relief that Ugenie, its officers, agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with them, be enjoined and restrained from:

(a) Using any software program or tool to access, gather, or obtain any textbook or course data from *e*Follett or Follett's computer systems; or

(b) Accessing in any way *e*Follett or Follett's computer systems for purposes of obtaining data for commercial purposes; or

(c) Circumventing or attempting to circumvent any technological measures that effectively control access to *e*Follett or Follett's database of textbook information; or

(d) Otherwise accessing or tampering with *e*Follett or Follett's computer systems without express prior authorization, or

(e) Using any data that Ugenie has previously acquired from *e*Follett or Follett's computer systems;

(3) That the Court order Ugenie to pay Follett's general, special, actual, and statutory damages proximately caused by Ugenie's violations of the Illinois Computer Crime Prevention Law in an amount to be determined at trial;

(4) That the Court order Ugenie to pay to Follett the costs of this action and the reasonable attorneys' fees that it incurred in prosecuting this action; and

(5) That the Court grant Follett such other and additional relief as it deems just and proper.

**JURY DEMAND**

Follett demands a trial by jury on all issues and claims to which it is entitled to a jury.

Respectfully submitted,

**FOLLETT HIGHER EDUCATION GROUP, INC.**

By: ______________________
One of its attorneys

Steffanie N. Garrett
Illinois Bar No. 620951
Holland & Knight LLP
131 S. Dearborn, 30th Floor
Chicago, Illinois 60603
Telephone: (312) 263-3600
Facsimile: (312) 578-6666
E-mail: steffanie.garrett@hklaw.com

Edward J. Naughton
(*admission pending*)
Massachusetts Board of Bar Overseers No. 00059
Holland & Knight LLP
10 St. James Ave.
Boston, Massachusetts 02116
Telephone: (617) 523-2700
Facsimile: (617) 523-6850
E-mail: edward.naughton@hklaw.com

# 4872487_v1